THE CITY OF CLEVELAND v. HANSON.

*Municipal corporations—Negligence—Sidewalks—Areaway in disrepair and unsafe—Liability to pedestrian—Defenses—Written covenant not to sue—Release by pedestrian to property owner.*

1. A municipal corporation is bound by statute to keep its sidewalks in repair and free from danger and is liable to a pedestrian for injuries received from falling through an areaway extending out into the sidewalk and leading to the basement of an adjoining building, which was constructed in a safe and substantial manner but allowed to become unsafe and out of repair through natural wear and decay of the sidewalk produced by usage and time.

2. The city cannot set up as a defense to an action brought against it by such pedestrian for the injuries thus sustained a written release and covenant not to sue executed by the plaintiff in consideration of a sum of money received by him from the abutting property owner releasing such property owner from all claims that plaintiff might have against him arising out of such accident.

(Decided December 18, 1921.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. W. B. Woods,* for plaintiff in error.
*Mr. John Cline,* for defendant in error.

SULLIVAN, J.   In the court below the parties hereto stood in the reverse order, the defendant in error being the plaintiff and the plaintiff in error being the defendant.

The suit was an action for damages for personal injuries in the sum of $45,000.  The petition alleged that West 58th street in the city of Cleveland was a duly dedicated street; that at the corner of said street and Clark avenue was a large building; that on the west 58th street side of said building there was an areaway or entrance extending from the sidewalk of said street into the basement; and that said areaway extended back and encroached to and upon the sidewalk of said street, and formed an opening in said sidewalk, and in the ground immediately adjacent thereto, which opening extended into the basement of said building to a depth of about six feet.

The petition also alleged that said areaway was upon that part of the street commonly and regularly used by the pedestrians, and that the opening was unguarded and unprotected.

The petition further alleged that on the 4th of August, 1917, the plaintiff, while walking on said sidewalk on West 58th street, was seriously injured by falling into the opening or hole in said sidewalk, and was precipitated to the bottom of the hole, injuring herself in a serious manner.

The plaintiff then alleged in her petition various acts of negligence on the part of the defendant, all of which, the petition alleged, resulted in the injuries complained of.

There was evidence tending to show that the building aforesaid was erected about twenty years prior to the date of the accident, and that there was a covering originally built over the hole, which made an entrance to the cellar, which covering extended out to and onto the sidewalk, and that this covering remained in good condition until about six months to a year before the date of the injuries complained of by the plaintiff.

That there was a defect in the sidewalk, that the hole was made at the time the building was constructed, for the purpose of furnishing means of ingress and egress to the basement thereof, and that said hole remained there for many years, as well as other material elements in the case, seem to be undisputed. It further appears from the evidence that this property at the time of the accident was owned by The Representative Realty Company and that a suit was begun against that company by the plaintiff for her injuries, and that while the same was pending the sum of $2,800 was paid plaintiff by said company upon a written instrument which she executed and delivered, termed "Covenant and Agreement not to sue," in terms as follows:

*"For the Sole and Only Consideration* of the sum of Twenty Eight Hundred Dollars ($2800.00), the payment of which to our duly authorized agent and attorney is hereby acknowledged, we, the undersigned, hereby jointly and severally promise, covenant and agree to and with *The Representative Realty Company,* its successors and assigns, that neither we, nor either of us, nor any one claiming through us, will hereafter bring, commence, prosecute or maintain, or cause or permit to be brought, commenced, prosecuted or maintained, any suit or act-

tion, either at law or in equity, in any court in the United States or in any state thereof, or elsewhere, against *The Representative Realty Company,* its successors or assigns, for, on account of, arising out of, or in any way connected with certain injuries and the injurious results arising, or hereafter to arise therefrom, received by the said *Frances Hanson* on or about the 4th day of August, 1917, by falling into a hole or areaway while passing along the premises at the southeast corner of Clark avenue and West 58th street, Cleveland, Ohio, and that neither we, nor either of us, nor any one claiming through us, will enforce, prosecute, or recover upon, or attempt to enforce, prosecute, or recover upon, any claim or right of action whatsoever, which we, or either of us, or any one claiming through us, may now have or may hereafter assert, in any way connected with the said accident, the injuries resulting therefrom or the injurious results arising or hereafter to rearise therefrom.

"And in consideration of the premises, the undersigned, *Frances Hanson,* hereby authorizes the action heretofore pending in the Common Pleas Court of Cuyahoga County, Ohio, entitled Frances Hanson, Plaintiff, vs The Representative Realty Company, Defendant, being No. 158,469 on the docket of said court, to be entered 'Dismissed at plaintiff's costs. No record.'

"In witness whereof, we have signed our names to two copies of the foregoing covenant and agreement not to sue, at Cleveland, Ohio, this 30th day of April, 1918."

This covenant and agreement not to sue, so-called, was the basis of the second ground of defense in the action at bar, and the court held that the same was

not available and did not constitute a ground of defense in the instant case, the aforesaid action against the Realty Company having been dismissed upon the execution of the aforesaid instrument of writing.

The particular errors which the city of Cleveland relies on in this action are based upon the refusal of the court to grant the motion to direct a verdict at the close of plaintiff's evidence, and upon the court's refusal to direct a verdict at the close of all the evidence, together with the alleged error of the court in its charge to the jury to the effect that the matters set forth in the aforesaid second defense of the amended answer did not constitute a bar or defense to the matters set forth in the plaintiff's petition.

The main question presented to this court as to reversible error committed by the court below is: whether the aforesaid covenant and agreement not to sue was a bar to any action against the city of Cleveland for the injuries complained of, and whether the execution of the aforesaid covenant not to sue the Realty Company and the receipt from them by plaintiff below of the sum of $2,800 constituted a release to the defendant below of any lawful claim for damages in the premises.

This question was determined in a decision of the supreme court of Ohio in the case of *Adams Express Co.* v. *Beckwith*, 100 Ohio St., 348, the syllabus of which is as follows:

"1. A written release in general and unqualified terms, made and executed upon legal consideration between a party wronged and one or more of the persons charged with the commission of the wrong, is presumed in law to be a release for the benefit of all the wrongdoers.

"2. Such written releases, however, are to be construed according to the well-known rules governing the construction of contracts.

"3. Where such written releases expressly provide that the release is solely and exclusively for the benefit of the parties thereto, and expressly reserves a right of action as against any other wrongdoer, such reservation is legal and available to the parties thereto.

"4. Such written release, whether it be a covenant not to sue, a covenant to cease suing, or a covenant in partial satisfaction, does not inure to the benefit of any other persons than those who are parties to such written release, save and except that it is a satisfaction *pro tanto* to the party wronged and to that extent works a discharge to all joint wrongdoers. (*Ellis* v. *Bitzer*, 2 Ohio, 89, disapproved and overruled.)"

In the opinion of Judge Wanamaker, as reported on pages 354, 355 and 356, we call attention to the following pungent, logical, and comprehensive reasoning, and are of the opinion that the language is applicable to the facts substantially conceded in the case at bar:

"Now, where it is charged that two or more persons have committed a wrong against another, the question arises, May one of these persons buy his peace, settle all claims for damages made against him, solely for his own benefit and his own release, leaving or reserving all questions as to the liability of others for independent and later determination? Why not? What principle of law, of reason or righteousness, what primary element of justice, is violated by such a proceeding, save the dictum of some court? It is admitted that in a joint act com-

mitting a wrong upon some other party, the act of each in the furtherance of the wrong is the act of all, and that each is in principle, and therefore in law, the agent of all in the furtherance of such wrongful purpose. While, however, the part that each played in the doing of the wrong makes him responsible for the whole wrong, it nevertheless is likewise clear that there can be but one satisfaction, one redress, for that wrong. The injured party may not receive full satisfaction from more than one of the wrongdoers, and when he has received such full satisfaction it should be an end of the whole matter and all other wrongdoers should be discharged, not because they didn't do wrong, or the wrong has been condoned, but upon the principle that full satisfaction has once been made to the injured party. But, in the *Bitzer case, supra,* there was only partial 'satisfaction' as to 'them.' It was particularly specified that such satisfaction was not to operate as a satisfaction for the other defendants.

"Upon what principle the court took a contract between the parties, which was in plain, definite and unambiguous terms, and wrote into that contract not only what it did not contain, but what the contract expressly said it should not contain, is beyond understanding. It emphasizes the importance of a release without a complete satisfaction and extinguishes a right without such satisfaction.

"There is neither reason, rhyme, nor righteousness in such a course of reasoning, if it may be called reasoning at all. There is nothing peculiar or exceptional about contracts of release, or contracts not to sue, or contracts to cease prosecuting a suit. They are presumably to be construed, if in doubt, by the same rules of arriving at the intention of the parties as any other kinds of contract.

"But courts unfortunately have too often not only disregarded the intention of the parties in such kinds of contracts, but have made new contracts for the parties squarely contrary to what the parties themselves intended. The *Bitzer case* is, therefore, disapproved.

"Much has been said in the course of this case in undertaking to distinguish between a covenant not to sue, a covenant to cease suing, and a covenant for partial satisfaction. In principle I am unable to distinguish them. It is too much a case of tweedle dee and tweedle dum. Such engagements are all made with reference to and solely in connection with a conceded or contended liability for wrongs committed by two or more persons known in common law as joint tort-feasors. Whether there was any wrong or not, whether such wrong was the proximate cause of an injury, which one, if any, or all, of the defendants is liable as charged, should be determined exactly as if no contract of settlement, or satisfaction, or covenant not to sue, had become a part of the pleading or proof of the case. If it turns out that there is any such agreement as in the case at bar, by which partial satisfaction may have been made by other persons charged with the commission of the wrong or injury, then such partial satisfaction will inure to the benefit of all parties responsible in law for the commission of the wrong. The obligation is joint and several. It is an obligation to pay the damage done, and the whole damage done, but to pay it but once, and when that damage is once fully paid that is the end of the whole matter. But there is no reason why, unless the parties all agree, a partial satisfaction should be declared a full satisfaction. It is not so done as to contractual obliga-

tions; it should not be so done as to tortious obligations.''

The defendant below makes the contention that the foregoing opinion of the supreme court does not apply to the facts in this case, and cites to sustain its contention *Bello* v. *City of Cleveland,* 13 Ohio App., 297, being case Number 3091 of the court of appeals of Cuyahoga county, decided May 28, 1920, by Judge Washburn, *Kouba* v. *City of Cleveland,* 13 Ohio App., 443, being case Number 3107, of the court of appeals of Cuyahoga county, decided December 16, 1920, by Judge Washburn, *Morris* v. *Woodburn,* 57 Ohio St., 330, and *Village of Mineral City* v. *Gilbow,* 81 Ohio St., 263.

We do not think, however, that the salient facts in the above cases are determinative of the main point at issue in this case, to-wit: Was the covenant not to sue a bar to any cause of action for the same injuries against the city of Cleveland?

In the *Bello case, supra,* the owner of the property *created and constructed* a dangerous condition with respect to the sidewalk by causing steam and water to endanger the safety of the sidewalk, all of which resulted in a cave-in, into which Bello fell. In that case the city had no knowledge or notice of those acts, but the aforesaid notice and knowledge are not so important as the fact that it appears in the *Bello* case that there was the *creation* of a tort, which distinguishes it materially from the case at bar.

In the *Kouba case, supra,* it appears that a contractor had *created* and constructed a certain ditch in order to enable him to build a sewer, and the same was left without protection, so that he became primarily liable for any injuries which might result because of the *creation* of a nuisance.

Indeed, in the *Kouba case,* the court took occasion to say that if both parties were active and independent wrongdoers, or where there was concerted action, both would be liable, and that because there was not any concerted or concurrent action the city was not liable and was not an active wrongdoer, either independently or in concert with the contractor. The contractor was guilty of active and independent tort, as what he did was without any action on the part of the city, and the city had nothing whatsoever to do with the nuisance which he himself had primarily created.

We find the same principle in *Morris* v. *Woodburn, supra.* From the language of the court in that case, as employed by Judge Shauck, it is plain that the creation of the nuisance was the tort for which Mrs. Morris was held accountable, and that by reason thereof the primary liability rested upon her. After a careful reading of that case we think that if the case had been tried with the amended petition of Woodburn in the case, there is strong probability that the city would have been held liable.

The action at bar is irresistibly differentiated from that case because the injury to the plaintiff here resulted, as the evidence discloses, from natural wear and decay of the sidewalk, produced by usage, time, and storm, and not through any overt act of the owner of the property, and not because of any defect in the original plan or construction of the area-way adjacent to the sidewalk, into which the plaintiff fell. The defendant below contends that it and The Representative Realty Company were not joint tort-feasors, and that therefore there can be no applica-

tion of the rule laid down by Judge Wanamaker in *Adams Express Co.* v. *Beckwith, supra.*

We cannot agree with this contention. It appears from the evidence in the case at bar that during the many years of the existence of the area aforesaid it increased in danger to pedestrians. The city had constructive notice, if not actual notice, and was, therefore, bound to its statutory liability to keep the sidewalks of the city free from danger and in repair. If the owner of the adjacent land was liable in this case at all, it would only be a liability which was joint with the statutory liability of the city. There is grave doubt as to whether there was a legal cause of action against The Representative Realty Company for damages in this case, by reason of the fact that the nuisance was not created by the abutting owner at the time of the construction of the aforesaid building, inasmuch as during the intervening years the city was charged with either constructive or actual notice of the increasing danger to pedestrians along said sidewalk, and it became the duty, and the primary duty, of the city, under the statute, to keep the sidewalk in repair, and the city became liable for the lack of repair to such limit as it became dangerous to pedestrians in using the sidewalk. There was a duty and an obligation owing to the users of the sidewalk by the city to maintain the same and keep it in repair, and in no event to allow a nuisance to become more and more dangerous as the years went by, by maintaining the nuisance. This was not only a duty and obligation that was owing to the general public, but to the property owner adjacent to the sidewalk, who himself was a part of the body politic; and, as before stated, it is

very questionable whether, under the facts of this case, there was any legal liability against the adjacent property owner because of the maintenance of the nuisance aforesaid, especially when it is to be observed that there can be no heavier imposition of duty than the mandatory obligations enjoined by statute. Certainly there is a distinction, to say the least, between the statutory obligations resting upon the city and the obligations that might be imposed upon the adjacent property owner by reason of the fact that the sidewalk was contiguous to his property.

The court is of the opinion in the case at bar that The Representative Realty Company and the city are joint tort-feasors; or else, if they are not joint tort-feasors, that there is no question but that the city itself is liable under the facts in this case. There is a duty resting upon a property owner adjacent to a sidewalk as to dangerous defects therein, but it is not commensurate with the degree of statutory duty resting upon the municipality; but the duty of one, though less, and the duty of the other, though greater, is a joint obligation and duty, and in that sense it would seem that the contention is well founded that the city and the property owner are either joint tort-feasors or else that the property owner is not liable at all.

It would appear that the decision in the 100th Ohio State, *supra,* had not been published in the reports at the time the opinions in the *Bello* and *Kouba* cases, *supra,* were rendered; and that perhaps it was not then considered.

We believe that the opinion of the supreme court in the 100th Ohio State, *supra,* governs the facts in this case.

It is therefore the holding of this court that there is no prejudicial error in the record, and the holding of the common pleas court herein is hereby affirmed.

*Judgment affirmed.*

VICKERY, P. J., and INGERSOLL, J., concur.